**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

TRACEY M. CROSLAND,      :
         :
    Plaintiff,      :
         :    Civil Action No.
v.         :
         :
JPMORGAN CHASE BANK, N.A.,    :    _____
EQUIFAX INFORMATION      :
SERVICES, LLC,      :    **JURY TRIAL DEMANDED**
EXPERIAN INFORMATION      :
SOLUTIONS, INC., and      :
TRANS UNION, LLC,      :
         :
    Defendants.      :
_____:

## COMPLAINT FOR DAMAGES

### INTRODUCTION

1. Plaintiff, Tracey M. Crosland ("Crosland"), brings this action for damages against JPMorgan Chase Bank, N.A. ("Chase") for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq., as amended* ("FCRA").

2. Chase sued Crosland to collect an alleged credit card debt in the State Court of Gwinnett County, Georgia.

3.      Crosland defended the lawsuit on the basis that she never owed the alleged debt, that there was no contract or agreement between herself and Chase, and that the two had never transacted business together.

4.      The case terminated when the State Court of Gwinnett County, Georgia issued a judgment determining Crosland was not liable and: "that there is no contract between the parties, that there is no other form of agreement between the parties, that [Crosland] is not indebted to [Chase], [and] that [Crosland] does not owe any amount of money whatsoever . . ." *See* Order Granting Defendant's Motion for Summary Judgment, Civil Action File No. 21-C-06390-S1, State Court of Gwinnett County, Georgia (March 1, 2022) attached hereto as Exhibit "A" [hereinafter referred to as "Judgment"].

5.      Despite a Court Order stating that Crosland was not indebted to Chase, Chase continued to report to credit reporting agencies ("CRAs") that Crosland is indebted to Chase and in default of the full $10,965 balance (the "False Debt") that Chase had unsuccessfully asserted in its lawsuit against Crosland.

6.    Chase's violation of the FCRA include furnishing false and adverse information about Crosland to CRAs  regarding this False Debt, even after a court of law found that Crosland did not owe the balance, or any money whatsoever, to Chase.  Moreover, Chase continued to reaffirm the False Debt several times after Crosland disputed the false and adverse information with the CRAs who were reporting the False Debt.

7.    Crosland also brings this action against several major credit reporting agencies Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union, LLC ("Trans Union") [collectively the "CRA Defendants"] who reported the False Debt on her credit reports for their violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq., as amended* ("FCRA").

8.    The CRA Defendants' violations include failing to maintain reasonable procedures in order to assure maximum possible accuracy of the information they report and failing to conduct reasonable investigations in response to Crosland's multiple disputes regarding the False Debt in her credit files.

9.    Crosland put each CRA Defendant on notice that the False Debt was not owed by providing a copy of the State Court's Judgment that was made to each of them on August 10, 2022.

10.   Despite receiving copies of the Judgment showing Crosland did not owe the False Debt to Chase, each CRA Defendant failed to conduct any sort of investigation to verify the content of the Judgment, as such an investigation would have led each CRA Defendant to have removed the False Debt from Crosland's credit report.

11.   Due to the CRA Defendants' reporting of the False Debt, Crosland was denied a car loan she desperately needed in order to afford a car for transportation to and from work. Moreover, the reporting of the False Debt also led to receiving multiple denials in credit limit increases, which she needed to pay both basic expenses and cover the cost of necessary dental care.

12.   Dealing with this matter has caused Crosland to experience emotional distress in the form of anxiety, worry, and concern as the reporting of the False Debt on her credit reports has affected her ability to obtain necessary items such as a car and  dental care.

Crosland has also felt frustrated, hopeless, and humiliated by both Chase and the CRA Defendants' failure to correct the false and adverse information despite providing copies of the Judgment showing she did not owe the False Debt.

## SUBJECT MATTER JURISDICTION

13. Subject matter jurisdiction in this Court is proper pursuant to 15 U.S.C. § 1681p, 28 U.S.C. §§ 1331 & 1337 (federal question).

14. Venue lies properly in this District pursuant to 28 U.S.C. § 1391(b).

## PARTIES AND PERSONAL JURISDICTION

15. Plaintiff Crosland is a natural person and is authorized by law to bring this action.

16. Defendant Chase is a bank chartered under the laws of the United States of America with its principal office address located at 1111 Polaris Parkway, Columbus, OH 43240.

17. Chase is a nationwide provider of banking and financial services and markets its services throughout the country, including the State of Georgia

18.   Chase continually and systematically transacts business within this District, including multiple branch locations and ATMs.

19.   Because Chase is a national bank, Chase's branch locations are treated as if they were the "main office" of Chase. 12 U.S.C. § 36(f)(2).

20.   Chase is subject to the jurisdiction and venue of this Court.

21.   Chase may be served by personal service upon its registered agent in the State of Georgia, to wit: C T Corporation System, 289 S Culver St., Lawrenceville, GA 30046-4805.

22.   Chase may likewise be served by personal service upon any authorized agent at any of its branch locations.

23.   Defendant Equifax is a Georgia limited liability company that regularly conducts business within the State of Georgia with a principal office located at 1550 Peachtree Street, N.W., Atlanta, GA 30309-2402.

24.   Equifax is subject to the jurisdiction and venue of this Court.

25.   Equifax may be served by personal service upon its registered agent in the State of Georgia, to wit: Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

26.    Defendant Experian is an Ohio corporation with its principal place of

business located at 475 Anton Boulevard, Costa Mesa, CA 92626.

27.    Experian continually and systematically transacts its business within

this District.

28.    Experian is subject to the jurisdiction and venue of this Court.

29.    Experian may be served by personal service upon its registered agent

in the State of Georgia, to wit: C T Corporation System, 289 S Culver

St., Lawrenceville, GA 30046-4805.

30.    Defendant Trans Union is a Delaware corporation with its principal

place of business located at 555 W. Adams St., Chicago, IL 60661-3719

31.    Trans Union continually and systematically transacts its business

within this District.

32.    Trans Union is subject to the jurisdiction and venue of this Court.

33.    Trans Union may be served by personal service upon its registered

agent in the State of Georgia, to wit: Prentice-Hall Corporation

System, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

34.	Other defendants may be discovered during the course of litigation, and Crosland respectfully prays that the Court will permit the addition of later discovered parties upon motion.

## FACTS COMMON TO ALL CAUSES

35.	At all times pertinent hereto, Crosland was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

36.	At all times pertinent hereto, Chase was both a "person" and a "furnisher" as those terms are defined by the FCRA, 15 U.S.C. § 1681a(b) and s-2(b).

37.	At all times pertinent hereto, Equifax, Experian, and Trans Union were each a "person" and a "consumer reporting agency" as those terms are defined by the FCRA, 15 U.S.C. § 1681a(b)&(f).

38.	At all times pertinent hereto, the credit reports discussed herein were "consumer reports" as that term is defined by the FCRA, 15 U.S.C. § 1681a(d).

39.	On August 27, 2021, Chase filed a Summons and Complaint against Crosland in the State Court of Gwinnett County, Georgia seeking to

collect $10,915.39 from her that was related to an allegedly defaulted credit card ("Lawsuit").

40. On March 1, 2022, Judge Brantley of the State Court of Gwinnett County, Georgia issued an Order Granting Defendant's Motion for Summary Judgment and adjudicated the case in Crosland's favor. *See* Exhibit "A".

41. The Judgment specifically found and ruled that no genuine issue of material fact remained as to the following:

    a.  "there is no contract between the parties,"

    b.  "there is no other form of agreement between the parties,"

    c.  "[Crosland] is not indebted to Plaintiff,"

    d.  "[Crosland] does not owe [Chase] any amount of money whatsoever, and"

    e.  "[Chase] is not the real party in interest to this lawsuit."

42. Around this time, Crosland was in the market for credit as she needed to purchase a car for transportation to and from work and afford other basic expenses such as necessary dental care. .

43.  Prior to applying for credit, Crosland ordered her credit files from each of the CRA Defendants.

44.  When Crosland received her April 18, 2022 file disclosures from Experian and Trans Union, she was surprised to see the False Debt was still being reported on her credit reports. Similarly, when Crosland received her May 17, 2022 file disclosure from Equifax, the False Debt was also being reported there as well.

45.  Additionally, the amount of the False Debt had been updated after the Judgement to reflect a   slightly higher amount that the amount sought in the original Lawsuit Chase filed against Crosland.

46.  Crosland was disheartened to discover the reporting of the False Debt on her credit reports, as she felt that the drop in her credit score caused by the false and adverse information would make it futile to obtain credit for a car loan.

47.  Fearing that she would be frozen out of the credit market until the error was fixed, Crosland disputed the False Debt on her credit reports with each Defendant CRA. On June 3, 2022, Crosland sent a virtually identical and detailed dispute letter via Certified Mail to

each CRA Defendant. In her dispute letters, Crosland explained that the False Debt was inaccurately being reported on her credit reports ("June 3 Disputes").

48.   The June 3 Disputes referenced the Judgment, its contents, the court, the county, the state, the case number, and both the phone number and address for the court which had entered the Judgment. By including such information, each Defendant CRA could have easily confirmed the veracity of Crosland's statements in her dispute letters sufficient to overcome any objections or reaffirmation of the False Debt by Chase. In confirming that the Judgment was in fact rendered in favor of Crosland, no Defendant CRA would have been required to engage in any legal analysis of whether Crosland owed the False Debt to Chase—the State Court had already decided that she did not.

49.   Upon information and belief, as the CRA Defendants are required by the FCRA to notify furnishers of any information being disputed by a consumer, the CRA Defendants each notified Chase of Crosland's June 3 Disputes.

50.   On June 16 Experian and Equifax each independently responded to the June 3 Disputes. On June 23, Trans Union also responded to the June 3 Disputes.  All three CRA Defendants reaffirmed that Crosland owed the False Debt in the amount of $10,965 ("June Responses"). If Chase had complied with its obligations under the FCRA, then it would have concluded that the State Court's Judgment in Crosland's favor invalidated any claim it had to continue to report the False Debt with the CRAs.

51.   Chase's reaffirmation of the False Debt was done so knowingly and willingly

52.   In reaffirming the False Debt, the CRA Defendants knowingly and willfully chose not to conduct a reasonable, independent investigation of their own, as even the most cursory of investigations would have revealed that the False Debt was indeed false and should not be reported on Crosland's credit reports.

53.   After the CRA Defendants each sent Crosland their June Responses reaffirming the False Debt, Crosland was left with no other option

but to try to apply for a car loan with this negative information being reported anyway, as her need for a car became xtremely pressing.

54. On July 8, 2022, Associated Credit Union used information supplied by Equifax to deny her application fora car loan. In its denial letter, Associated Credit Union stated that key factors in its decision to deny her credit included, "Serious Delinquency; Proportion of balances to credit limits is too high on bank revolving or other revolving accounts; time since delinquency is too recent or unknown; number of accounts with delinquency". The factors which led to Associated Credit Union to deny Crosland's application for a car loan resulted, at least in part, from the False Debt furnished by Chase and reported by the CRA Defendants.

55. Associated Credit Union used information supplied by Equifax in its denial of Crosland's application for a car loan.

56. The denial of the car loan left Crosland humiliated, frustrated, and anxious, as she worried that she may not be able to have reliable transportation.

57.    On August 10, 2022, Crosland sent new disputes via Certified Mail to each of the CRA Defendants, again disputing the False Debt ("August 10 Disputes").

58.    Crosland included with the August 10 Disputes a copy of the Judgment.

59.    Neither the CRA Defendants nor Chase would have had to do anything other than to read the document Crosland provided to them in order to determine that the False Debt was inaccurate and should therefore be deleted from her credit reports.

60.    In response to Crosland's August 10 Disputes, Chase willingly and knowingly failed to conduct an investigation when it reaffirmed the False Debt despite actual knowledge of the Judgment in Crosland's favor.

61.    Despite Chase reaffirming the False Debt to the CRA Defendants, had the CRA Defendants actually reviewed the copy of the Judgement Crosland provided with her August 10 Disputes, the CRA Defendants should have easily determined that the False Debt was not owed and unilaterally acted to remove it from her credit reports.

62.   Later that same month, all three CRA Defendants responded and
      reaffirmed the False Debt as accurate (August Reponses).

63.   As a result of the combined actions of the Defendants, Crosland lost
      significant sleep fretting about her inability to obtain a car loan to
      ensure reliable transportation.

64.   In order to afford a car without a car loan while still making ends
      meet each month and affording some necessary dental work,
      Crosland pursued obtaining a credit limit increase with Associated
      Credit Union on her existing line of credit.

65.   On August 31, 2022, Associated Credit Union, again using
      information supplied by Equifax, denied the modest credit limit
      increase Crosland had requested for the following reasons: "Serious
      delinquency proportion of balances to credit limits is too high on
      bank revolving or other revolving accounts; time since delinquency is
      too recent; or unknown number of accounts with delinquency". All
      the factors leading to Associated Credit Union's denial of the credit
      limit increase would have been negatively impacted by the reporting
      of the False Debt.

66.   Crosland needed this credit limit increase in order to cover the cost of
      the necessary dental care which had been quoted at several thousand
      dollars and which she could not afford without financing.

67.   On August 31, 2022, her application from three different lenders to
      finance the dental care was denied by the following creditors:
      CareCredit, LendingTree, and OneMain Financial.

68.   CareCredit provided the following reasons for its denial: "Too few
      bankcards with high credit limits; too few accounts paid as agreed."

69.   LendingTree simply stated: "Unfortunately, after checking with our
      lending network, we were unable to find you a personal loan offer at
      this time."

70.   OneMain Financial denied her application based on: "Delinquent
      past or present credit obligations; percent of revolving credit in use;
      previous delinquency."

71.   The reasons provided by all three potential creditors demonstrate
      how the reporting of the False Debt adversely affected Crosland's
      ability to obtain credit and resulted in her being denied credit needed
      to afford necessary dental care.

72.  Crosland suffers physical pain from her inability to get the necessary dental work completed, as she has nowhere to turn for credit.

73.  As of the date of the filing of this Complaint, Chase continues to furnish the False Debt with each of the CRA Defendants, who then continue to report the False Debt on Crosland's credit reports. The collective behavior of the Defendants has not only defamed Crosland and caused her emotional distress in the form of anxiety, worry, hopelessness, frustration, and humiliation, but has also caused her physical pain in the form of toothaches from being unable to afford necessary dental care, headaches, and the inability to get restful sleep. Defendants' collective actions have also had an impact on her financially, as the reporting of the False Debt on her credit reports has drastically diminished Crosland's creditworthiness and cost her the ability to obtain credit she needed in order to afford both reliable transportation and necessary dental care.  obtain credit

## CAUSES OF ACTION

## COUNT ONE: CHASE'S NEGLIGENT VIOLATIONS OF THE FCRA

74.    The FCRA requires that a furnisher of information, such as Chase, to
"conduct an investigation with respect to all the disputed
information" upon receiving notice of a dispute from a credit
reporting agency. The furnisher must review all relevant information
provided to it by the credit reporting agency as part of the
investigation. After conducting its investigation, the furnisher must
inform the credit reporting agency of its results. If the furnisher finds
the information is incomplete or inaccurate, or cannot be verified, it
must modify, delete, or permanently block the reporting of the
disputed information. 15 U.S.C. § 1681s-2(b).

75.    The policies and procedures of Chase do not ensure compliance with
the furnisher provision of the FCRA.

76.    Chase received notice from each of the three CRA Defendants on
more than one occasion that Crosland had disputed the false Debt,
but negligently failed to comply with FCRA's investigative
requirements and the requirements to modify, delete, or permanently

block when the information it furnished was incomplete or inaccurate in violation of 15 U.S.C. § 1681s-2(b).

77.   As a result of Chase's failure to comply with the furnisher provisions of the FCRA, Chase has caused Crosland's credit to be defamed, drastically diminished her credit-worthiness, cost her the ability to borrow at preferred rates or at all, left her with transportation insecurity, stripped her of necessary dental care, cost her time and money trying to resolve what never should have been her responsibility to cure to no avail, and severe emotion distress in the form of anxiety, worry, hopelessness, frustration, humiliation, loss of sleep, toothaches, and headaches.

78.   Crosland seeks her actual damages in an amount to be determined by a jury pursuant to 15 U.S.C. 1681o(a)(1).

79.   Crosland seeks her costs and reasonable attorney fees pursuant to 15 U.S.C. § 1681o(a)(2).

### COUNT TWO: CHASE'S WILLFUL VIOLATIONS OF THE FCRA

80.   The FCRA requires a furnisher of information, such as Chase, to "conduct an investigation with respect to all the disputed

information" upon receiving notice of a dispute from a credit

reporting agency. The furnisher must review all relevant information

provided to it by the credit reporting agency as part of the

investigation. After conducting its investigation, the furnisher must

inform the credit reporting agency of its results. If the furnisher finds

the information is incomplete or inaccurate, or cannot be verified, it

must modify, delete, or permanently block the reporting of the

disputed information. 15 U.S.C. § 1681s-2(b).

81.     Chase received notice from each of the CRA Defendants on more

than one occasion that Crosland had disputed the False Debt and

willfully failed to comply with FCRA's investigative requirements

and the requirements to modify, delete, or permanently block when

the information it furnished was incomplete or inaccurate in violation

of 15 U.S.C. § 1681s-2(b).

82.     Chase knew, or should have known, based upon clear documentation

and the continued persistence of Crosland that the debt they were

furnishing was false and not Crosland's debt; nevertheless, Chase

continued to reaffirm the account after each dispute and, in turn, willfully damaged Crosland's credit and credit worthiness.

83. As a result of Chase's failure to comply, Chase has caused Crosland's credit to be defamed, drastically diminished her credit-worthiness, cost her the ability to borrow at preferred rates or at all, left her with transportation insecurity, stripped her of necessary dental care, cost her time and money trying to resolve what never should have been her responsibility to cure to no avail, and severe emotion distress in the form of anxiety, worry, hopelessness, frustration, humiliation, loss of sleep, toothaches, and headaches.

84. Crosland seeks damages in an amount to be determined by a jury pursuant to 15 U.S.C. 1681n(a)(1).

85. Crosland further seeks punitive damages in an amount to be determined by the jury pursuant to 15 U.S.C § 1681n(a)(2).

86. Crosland seeks her costs and reasonable attorney fees pursuant to 15 U.S.C. § 1681n(a)(3).

## COUNT FIVE: EQUIFAX'S NEGLIGENT VIOLATIONS OF THE FCRA

87.   The FCRA requires CRAs to follow reasonable procedures to assure

the maximum possible accuracy of the information in its reports. 15

U.S.C. § 1681e(b).

88.   The FCRA requires that CRAs conduct a reasonable reinvestigation

of any information that is disputed by a consumer to determine if the

information is accurate. CRAs must notify the source of the

information of the dispute within five days. CRAs must provide the

source with all relevant information received from the consumer.

CRAs must review and consider all relevant information provided by

the consumer in conducting the reinvestigation. CRAs must delete or

modify information that is found to be inaccurate or incomplete, or

that cannot be verified. CRAs must complete the reinvestigation

within 30 days, or within 45 days if the dispute is based on a free

annual credit report. CRAs must send a consumer written results of

the reinvestigation and a credit report that is based on the consumer's

file as that file is revised as a result of the reinvestigation. 15 U.S.C. §

1681i(a).

89. The policies and procedures of Equifax do not ensure compliance with these provisions of the FCRA.

90. Equifax negligently failed to comply with the requirements of the FCRA.

91. As a result of Equifax's failure to comply with the requirement of the FCRA, Equifax has caused Crosland's credit to be defamed, drastically diminished her credit-worthiness, cost her the ability to borrow at preferred rates or at all, left her with transportation insecurity, stripped her of necessary dental care, cost her time and money trying to resolve what never should have been her responsibility to cure to no avail, and severe emotion distress in the form of anxiety, worry, hopelessness, frustration, humiliation, loss of sleep, toothaches, and headaches.

92. Crosland requests her attorney fees pursuant 15 U.S.C. § 1681o(a).

## COUNT SIX: EQUIFAX'S WILLFUL VIOLATIONS OF THE FCRA

93. Equifax willfully failed to comply with the requirements of the FCRA, including but not limited to, 15 U.S.C. §§ 1681e and 1681i.

Equifax has also acted willfully as they have been provided with all the necessary facts to either unilaterally delete the false information or at least should have conducted a reasonable investigation into this matter.

94.   Equifax chose to do neither and instead elected to rubber stamp Chase's reaffirmation of the False Debt and continued to maintain the false and adverse information in Crosland's credit file as well as to disseminate the adverse and false information to third parties in response to inquiries and are continuing to report this inaccurate information as of the time of filing Crosland's Complaint.

95.   As a result of Equifax's failure to comply with the requirement of the FCRA, Equifax has caused Crosland's credit to be defamed, drastically diminished her credit-worthiness, cost her the ability to borrow at preferred rates or at all, left her with transportation insecurity, stripped her of necessary dental care, cost her time and money trying to resolve what never should have been her responsibility to cure to no avail, and severe emotion distress in the

form of anxiety, worry, hopelessness, frustration, humiliation, loss of
sleep, toothaches, and headaches.

96.  Crosland is entitled to punitive damages in an amount to be
determined by the jury. 15 U.S.C. § 1681n(a)(2).

97.  Crosland requests her attorney fees pursuant to 15 U.S.C. §
1681n(a)(3).

## COUNT SEVEN: EXPERIAN'S NEGLIGENT VIOLATIONS OF THE FCRA

98.  The FCRA requires CRAs to follow reasonable procedures to assure
the maximum possible accuracy of the information in its reports. 15
U.S.C. § 1681e(b).

99.  The FCRA requires that CRAs conduct a reasonable reinvestigation
of any information that is disputed by a consumer to determine if the
information is accurate. CRAs must notify the source of the
information of the dispute within five days. CRAs must provide the
source with all relevant information received from the consumer.
CRAs must review and consider all relevant information provided by

the consumer in conducting the reinvestigation. CRAs must delete or modify information that is found to be inaccurate or incomplete, or that cannot be verified. CRAs must complete the reinvestigation within 30 days, or within 45 days if the dispute is based on a free annual credit report. CRAs must send a consumer written results of the reinvestigation and a credit report that is based on the consumer's file as that file is revised as a result of the reinvestigation. 15 U.S.C. § 1681i(a).

100.   The policies and procedures of Experian do not ensure compliance with these provisions of the FCRA.

101.   Experian negligently failed to comply with the requirements of the FCRA.

102.   As a result of Experian's failure to comply with the requirement of the FCRA, Experian has caused Crosland's credit to be defamed, drastically diminished her credit-worthiness, cost her the ability to borrow at preferred rates or at all, left her with transportation insecurity, stripped her of necessary dental care, cost her time and money trying to resolve what never should have been her

responsibility to cure to no avail, and severe emotion distress in the form of anxiety, worry, hopelessness, frustration, humiliation, loss of sleep, toothaches, and headaches.

103.   Crosland requests her attorney fees pursuant 15 U.S.C. § 1681o(a).

## COUNT EIGHT: EXPERIAN'S WILLFUL VIOLATIONS OF THE FCRA

104.   Experian willfully failed to comply with the requirements of the FCRA, including but not limited to, 15 U.S.C. §§ 1681e and 1681i. Experian has also acted willfully as they have been provided with all the necessary facts to either unilaterally delete the false information or at least should have conducted a reasonable investigation into this matter.

105.   Experian chose to do neither and instead elected to rubber stamp Chase's reaffirmation of the False Debt and continued to maintain the false and adverse information in Crosland's credit file as well as to disseminate the adverse and false information to third parties in response to inquiries and are continuing to report this inaccurate information as of the time of filing Crosland's Complaint.

106.   As a result of Experian's failure to comply with the requirement of the FCRA, Experian has caused Crosland's credit to be defamed, drastically diminished her credit-worthiness, cost her the ability to borrow at preferred rates or at all, left her with transportation insecurity, stripped her of necessary dental care, cost her time and money trying to resolve what never should have been her responsibility to cure to no avail, and severe emotion distress in the form of anxiety, worry, hopelessness, frustration, humiliation, loss of sleep, toothaches, and headaches.

107.   Crosland is entitled to punitive damages in an amount to be determined by the jury. 15 U.S.C. § 1681n(a)(2).

108.   Crosland requests her attorney fees pursuant to 15 U.S.C. § 1681n(a)(3).

## COUNT NINE: TRANS UNION'S NEGLIGENT VIOLATIONS OF THE FCRA

109.   The FCRA requires CRAs to follow reasonable procedures to assure the maximum possible accuracy of the information in its reports. 15 U.S.C. § 1681e(b).

110.   The FCRA requires that CRAs conduct a reasonable reinvestigation of any information that is disputed by a consumer to determine if the information is accurate. CRAs must notify the source of the information of the dispute within five days. CRAs must provide the source with all relevant information received from the consumer. CRAs must review and consider all relevant information provided by the consumer in conducting the reinvestigation. CRAs must delete or modify information that is found to be inaccurate or incomplete, or that cannot be verified. CRAs must complete the reinvestigation within 30 days, or within 45 days if the dispute is based on a free annual credit report. CRAs must send a consumer written results of the reinvestigation and a credit report that is based on the consumer's file as that file is revised as a result of the reinvestigation. 15 U.S.C. § 1681i(a).

111.   The policies and procedures of Trans Union do not ensure compliance with these provisions of the FCRA.

112.   Trans Union negligently failed to comply with the requirements of the FCRA.

113.   As a result of Trans Union's failure to comply with the requirement
of the FCRA, Trans Union has caused Crosland's credit to be
defamed, drastically diminished her credit-worthiness, cost her the
ability to borrow at preferred rates or at all, left her with
transportation insecurity, stripped her of necessary dental care, cost
her time and money trying to resolve what never should have been
her responsibility to cure to no avail, and severe emotion distress in
the form of anxiety, worry, hopelessness, frustration, humiliation,
loss of  toothaches, and headaches.

114.   Crosland  requests her attorney fees pursuant 15 U.S.C. § 1681o(a).


**COUNT TEN: TRANS UNION'S WILLFUL VIOLATIONS OF THE
FCRA**

115.   Trans Union willfully failed to comply with the requirements of the
FCRA, including but not limited to, 15 U.S.C. §§ 1681e and 1681i.
Trans Union has also acted willfully as they have been provided with
all the necessary facts to either unilaterally delete the false

information or at least should have conducted a reasonable investigation into this matter.

116. Trans Union chose to do neither and instead elected to rubber stamp Chase's reaffirmation of the false Debt and continued to maintain the false and adverse information in Crosland's credit file as well as to disseminate the adverse and false information to third parties in response to inquiries and are continuing to report this inaccurate information as of the time of filing Plaintiff's complaint.

117. As a result of Trans Union's failure to comply with the requirement of the FCRA, Trans Union has caused Crosland's credit to be defamed, drastically diminished her credit-worthiness, cost her the ability to borrow at preferred rates or at all, left her with transportation insecurity, stripped her of necessary dental care, cost her time and money trying to resolve what never should have been her responsibility to cure to no avail, and severe emotion distress in the form of anxiety, worry, hopelessness, frustration, humiliation, loss of sleep, toothaches, and headaches.

118.   Crosland is entitled to punitive damages in an amount to be

determined by the jury. 15 U.S.C. § 1681n(a)(2).

119.   Crosland requests her attorney fees pursuant to 15 U.S.C. §

1681n(a)(3).

## JURY TRIAL DEMAND

120.   Crosland demands a trial by jury on all issues so triable.


WHEREFORE, Crosland respectfully prays that judgment be entered

in her favor and against the Defendants, as follows:

a)  That Crosland be awarded actual, statutory, exemplary, treble, and

punitive damages;

b)  That Crosland be awarded costs and expenses of litigation, including

reasonable attorney fees; and

c)  That the Court grant such other and additional relief is just under the

circumstances.

Respectfully submitted,

SKAAR & FEAGLE, LLP

By:   /s/ Cliff R. Dorsen

Cliff R. Dorsen
Georgia Bar No. 149254
cdorsen@skaarandfeagle.com
James M. Feagle
Georgia Bar No. 256916
jfeagle@skaarandfeagle.com
Chelsea R. Feagle
Georgia Bar No. 110863
cfeagle@skaarandfeagle.com
2374 Main Street, Suite B
Tucker, GA 30084
Tel.:  (404) 373-1970
Fax.:  (404) 601-1855

Kris Skaar
Georgia Bar No. 649610
kskaar@skaarandfeagle.com
Justin T. Holcombe
Georgia Bar No. 552100
jholcombe@skaarandfeagle.com
133 Mirramont Lake Drive
Woodstock, GA 30189
Tel.:  (770) 427-5600
Fax.:  (404) 601-1855

*Attorneys for Plaintiff Tracey M. Crosland*